# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SAMANTHA SMITH, as Guardian and Next Friend of S.S., an Incapacitated Adult, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 18-CV-046-JHP |
| (1) B.J. HEDGECOCK, Sheriff of Pushmataha County, Oklahoma, in his Official Capacity, (2) THE BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF PUSHMATAHA, a political subdivision of the State of Oklahoma, and (3) TAMARA RASHAE NICHOLS, an individual, in her Individual Capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are (1) Defendants Hedgecock and Board of County Commissioners' Partial Motion to Dismiss (Dkt. 7) and (2) Defendant Tamara Nichols' Partial Motion to Dismiss (Dkt. 21). After consideration of the briefs, and for the reasons stated below, both motions are **GRANTED**.

## BACKGROUND

Plaintiff Samantha Smith ("Plaintiff"), as guardian and next friend of S.S., who is an incapacitated adult, filed this action to recover against the defendants for alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff also brings state law tort claims for negligence, battery/issue preclusion, and violations of Oklahoma Constitution. The Petition names as defendants (1) B.J. Hedgecock, Sheriff of Pushmataha County, Oklahoma, in his official capacity ("Sheriff Hedgecock"), (2) the Board of County Commissioners for the County of Pushmataha, a political subdivision of the State of Oklahoma ("Board"), and (3) Tamara Rashae Nichols, in her individual capacity ("Nichols"). (Dkt. 2-2).

According to the Petition, on or about February 17, 2016, a District Court judge ordered S.S. remanded to the custody of the Pushmataha County Sheriff, and S.S. was confined to the Pushmataha County Jail. (Dkt. 2-2, ¶¶ 11-12). Plaintiff alleges Nichols, a Jailer/Deputy at the Pushmataha County Jail, repeatedly provided S.S. with illegal drugs in exchange for sexual intercourse with S.S. (*Id.* ¶¶ 14, 20-22). S.S. allegedly reported the sexual intercourse to the County Jail Administrator, who took no action to protect S.S. (*Id.* ¶ 20). Sheriff Hedgecock and other County employees were allegedly aware that Nichols had a prior history of sexual relations with County inmates. (*Id.* ¶¶ 16-17). Plaintiff alleges the

defendants knew or should have known that S.S. was mentally ill and incapable of consent to sexual relations with Nichols. (*Id.* ¶ 23). Nichols pleaded guilty to her actions with S.S. on December 7, 2016. (*Id.* ¶ 15).

Plaintiff asserts four causes of action against the defendants: (1) negligence/*respondeat superior* against the Sheriff and Board in failing to protect S.S. from the tortious conduct of their employees; (2) battery/issue preclusion against Nichols for raping S.S., to which Nichols pleaded guilty in Pushmataha County case number CF-2016-53; (3) relief under 42 U.S.C. § 1983 against all defendants for violation of S.S.'s rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; and (4) relief against all defendants for violating S.S.'s rights under Article II § 30 of the Oklahoma Constitution to be free from unreasonable searches and seizures, pursuant to *Bosh v. Cherokee County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013) (the "*Bosh* claim"). (*Id.* ¶¶ 28-77).

Sheriff Hedgecock and the Board (together, the "County Defendants") have now jointly filed a Partial Motion to Dismiss, seeking dismissal of Plaintiff's state law claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which any relief can be granted as a matter of law. (Dkt. 7). Plaintiff has filed a Response in opposition (Dkt. 13), and Sheriff Hedgecock and the Board have filed a Reply (Dkt. 19). Nichols has also filed a

3

Partial Motion to Dismiss, seeking dismissal of Plaintiff's *Bosh* claim against her pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 21). Plaintiff has filed a Response in opposition (Dkt. 23), and Nichols has filed a Reply (Dkt. 25). Both motions are fully briefed and ripe for review.

## DISCUSSION

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has stated that "plausibility" in this context refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 569). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly,* 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

I. **Motion of the County Defendants**

    A. **Negligence Claim Against the Board**

First, the County Defendants assert the Board is immune from suit for Plaintiff's state law claim for negligence/*respondeat superior* pursuant to the Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 Okl. St. §§ 151 *et seq*.[1] The OGTCA is the exclusive state-law remedy by which an injured plaintiff may recover against an Oklahoma governmental entity for its own torts and those of its employees. 51 Okl. St. § 153(B); *Fuller v. Odom*, 741 P.2d 449, 451-53 (Okla. 1987). The OGTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. 51 Okl. St. § 152.1(A). This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the OGTCA. 51 Okl. St. § 152.1(B). The Board is a political subdivision under the OGTCA. 51 Okl. St. § 152(11)(c); 19 Okl. St. § 4. Therefore, the Board may be subject to tort liability in situations where private

---

[1] Plaintiff pleads her negligence claim against the County Defendants as two separate causes of action—Negligence and OGTCA/*Respondeat Superior*. (Dkt. 2-2, at 5, 7). However, as the County Defendants point out, these claims both raise the same cause of action. Therefore, the Court will address both causes of action as a single negligence claim under the OGTCA.

persons or entities would also be liable under state law. *Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1065-66 (Okla. 1999).

The Board argues it is immune from liability for Plaintiff's negligence claim based upon OGTCA exemptions—specifically, exemptions found in §§ 155(4), 155(5), and 155(25). The Board further argues it cannot be held liable for Nichols' alleged actions in this case, because she was acting outside the scope of her employment.

### 1. Immunity Under § 155(25)

The Court first addresses the exemption in § 155(25), which provides immunity for political subdivisions for losses resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." 51 Okl. St. § 155(25). This exemption provided in § 155(25) "is all inclusive for tort claims." *Gibson v. Copeland*, 13 P.3d 989, 992 (Okla. Ct. App. 2000) (citing *Medina v. State*, 871 P.2d 1379 (Okla. 1993)). In *Medina*, the Oklahoma Supreme Court explained this exemption "reveals an intent to withhold the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the services of a penal institution," including the "security of the facility; the employment of personnel" and the "medical and health services or any other service provided for inmates or other persons." *Medina*, 871 P.2d at 1384 n.13 (discussing the scope of § 155(23),

the predecessor statute to § 155(25)). *See Redding v. State*, 882 P.2d 61, 63 (Okla. 1994) (holding the "legislative intent of § 155(23) is to protect the state from liability for loss resulting from any and all actions of officers and employees of a penal institution.").

In this case, Plaintiff's negligence claim arises in the context of the alleged rape of S.S. while he was in the custody of the Pushmataha County Jail. (*See* Dkt. 2-2, ¶¶ 1, 11-26). Therefore, § 155(25) clearly applies to this claim, and the Board is immune from suit with respect to Plaintiff's negligence claim.

In her Response, Plaintiff contends that § 155(25) does not protect the Board from liability, relying on *Nguyen v. State*, 788 P.2d 962 (Okla. 1990). *Nguyen* addressed whether the State was immune from liability for its decision to release a mental patient, based on the "discretionary function" immunity of 51 Okl. St. § 155(5). Plaintiff argues *Nguyen* is more directly on point to this case than *Medina* or *Redding*, because *Medina* and *Redding* dealt with errors in providing services, as opposed to "exercise of judgment without regard for known facts and services." (Dkt. 13, at 5). The Court does not find Plaintiff's argument persuasive, as *Nguyen* addressed a different ground for immunity than that pertaining to jail services.

Plaintiff additionally cites to dissents from two Oklahoma Supreme Court cases, which question whether the majority opinions in those cases read the immunity afforded by § 155 in an overly broad manner. *See Purvey v. State*, 905

7

P.2d 770, 772 (Okla. 1995) (Summers, J., dissenting); *Schmidt v. Grady Cnty., Okla.*, 943 P.2d 595 (Okla. 1997 (Summers, V.C.J., dissenting). However, the language in those dissents does not overcome the prevailing interpretation of § 155(25), as stated in *Medina* and *Redding*. The negligence claim in this case falls squarely within the exception of § 155(25).

### 2. Immunity Under § 155(5)

The Board further claims immunity based on § 155(5), to the extent Plaintiff's state law negligence claim is premised upon the hiring, retention or supervision of employees. 51 Okl. St. § 155(5) provides complete tort immunity to a political subdivision for losses resulting from "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." It is settled law in Oklahoma that a political subdivision's "hiring, training, and supervising decisions are discretionary and therefore a [political subdivision] may not be liable for damages resulting from those decision." *Jackson v. Okla. City Public Schools*, 333 P.3d 975, 979 (Okla. Civ. App. 2014) (citing *Houston v. Ind. Sch. Dis. No. 89 of Okla. Cnty.*, 949 F. Supp. 2d 1104, 1109 (W.D. Okla. 2013)). Accordingly, the Board is immune from liability on this claim as it pertains to hiring, retention, or supervision of employees.

In her Response, Plaintiff contends this defendant's liability arises not from the hiring of Nichols but from the operational level decisions made in implementation of policy-level decision-making, which fall outside of § 155(5) immunity. *See Nguyen*, 788 P.2d at 964-65 (noting the discretionary function exemption of § 155(5) covers "initial policy level or planning decisions" but not "operational level decisions made in the performance of policy."). However, Plaintiff's argument is at odds with the Petition, which specifically alleges the defendants were negligent in hiring and retaining employees who were under felony probation and who were known to have had prior sexual relations with current and former inmates. (Dkt. 2-2, ¶¶ 34(a)-(d)). Despite these allegations in the Petition, Plaintiff's briefing suggests she no longer asserts any claim of negligent hiring, retention, or supervision of employees. Even if she intends to retain this claim, Plaintiff cites to no authority to indicate that hiring, retention, and supervisory decisions are "operational" decisions rather than "policy" decisions. In light of *Jackson* and Plaintiff's apparent abandonment of such claims, any claim of negligent hiring, retention, or supervision of employees is dismissed.

### 3. Immunity Under § 155(4)

The Board further claims immunity based on 51 Okl. St. § 155(4), to the extent Plaintiff's negligence claim is premised upon the alleged failure to implement procedures that would protect incarcerated persons. Section 155(4)

9

provides tort immunity for losses resulting from "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Plaintiff does not directly respond to the Board's argument regarding § 155(4) immunity, which suggests the argument is conceded. Moreover, Plaintiff argues in her Response that the County Defendants are liable, in part, because they failed in their duties to implement safety policies. (Dkt. 13, at 6). Such a failure would fall squarely within the exemption of §155(4). Accordingly, Plaintiff's negligence claim based on the alleged failure to implement safety policies is subject to dismissal.

### 4. *Respondeat Superior* Liability

The Board contends Plaintiff's negligence claim based on *respondeat superior* liability is further barred, because the alleged conduct of employee Nichols—rape and provision of illegal drugs to an inmate—was necessarily conducted outside the scope of her employment. In her Response brief, Plaintiff agrees with the Board that Nichols was acting outside the scope of her employment "when she raped an incapacitated, incarcerated person under threat and duress." (Dkt. 13, at 4). However, Plaintiff does not concede this claim, arguing that her claim does not depend on Nichols' conduct.

The Court agrees with the Board that *respondeat superior* liability is unavailable in this case. Relief under the OGTCA against a political subdivision is not available "for any act or omission of an employee acting outside the scope of the employee's employment. 51 Okl. St. § 153(A). "Scope of employment" is defined in the OGTCA as "performance by an employee acting in good faith and within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ." 51 Okl. St. § 152(12).

Here, Plaintiff alleges Nichols repeatedly raped S.S. and provided S.S. with illegal drugs in exchange for sexual intercourse. (Dkt. 2-2, ¶¶ 14, 21-22, 60). The Oklahoma Supreme Court has consistently refused to find that sexual assaults by employees occurred within the scope of employment. *See N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 598-600 (Okla. 1999) (holding the sexual molestation of parishioner by church officer was outside the scope of employment as a matter of law); *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 161-62 (Okla. 2008) (explaining its prior holding in *N.H.* "was based upon the fact that no reasonable person would conclude that predatory sexual conduct was a part of, and in the furtherance of, the ecclesiastical organization's business."). Consequently, the Board cannot be held liable for such claims arising from Nichols' alleged conduct.

Plaintiff attempts to save this claim against the Board by arguing that this defendant "had an independent duty to protect S.S. unrelated to the acts or omissions of their employee." (Dkt. 13, at 7-8).[2] However, Plaintiff's claim may be actionable only in the context of a specific injury. Without the alleged actions of Nichols, Plaintiff would not have suffered any injury. Plaintiff does not elaborate on this argument in her briefing, but the Court does not find it persuasive. Plaintiff's negligence claim is dismissed as to the Board.

### B. Negligence Claim Against Sheriff Hedgecock

The County Defendants further argue that Sheriff Hedgecock in his official capacity is not a suable entity under the OGTCA. *See* 51 Okl. St. § 152(11) (definition of "political subdivision" does not include a sheriff in his official capacity). The Court agrees with these defendants that OGTCA claims may be brought only against the state or a political subdivision, which does not include a sheriff in his official capacity. *See* 51 Okl. St. § 153. Accordingly, Plaintiff's OGTCA claims may be properly presented only against the county, which is a political subdivision. 51 Okl. St. § 152(11). State law requires OGTCA claims such as this to name the county's Board of County Commissioners as the

---

[2] In a footnote, Plaintiff supports this argument by citing to several decisions that address federal constitutional claims brought by inmates: *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008); *Bell v. Wolfish*, 441 U.S. 520 (1979); and *Boddie v. Schneider*, 105 F.3d 857 (2d Cir. 1997). However, the Board's argument does not pertain to Plaintiff's constitutional claim. Accordingly, Plaintiff's citation to these cases in support of her Oklahoma negligence claim is inapt.

defendant. 19 Okl. St. § 4. *See Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008) ("Suit against a government officer in his or her official capacity is actually a suit against the entity that the officer represents," which "is improper under the [O]GTCA.") (citing *Pellegrino v. State ex rel. Cameron University*, 63 P.3d 535, 537 (Okla. 2003)). Plaintiff does not respond to this argument. Therefore, dismissal of the OGTCA negligence claim against Sheriff Hedgecock in his official capacity is appropriate for this additional reason.

### C. *Bosh* Claim

Finally, the County Defendants contend Plaintiff's *Bosh* claim against them is subject to dismissal as a matter of law. In *Bosh*, the Oklahoma Supreme Court recognized a private right of action for excessive force against a pre-trial detainee based on Article II § 30 of the Oklahoma Constitution, notwithstanding the limitations of the OGTCA. The court in *Bosh* further held that governmental entities may be held liable for such claims under a theory of *respondeat superior*, where the employees are acting within the scope of their employment. 305 P.3d at 1004. The County Defendants argue Plaintiff's *Bosh* claim fails, because Nichols' alleged actions in raping S.S. and procuring him illegal drugs necessarily do not fall within her scope of employment. Plaintiff's Response does not directly address this argument, but instead she argues that *Bosh* stands for the policy "that there is no immunity from clear constitutional rights violations." (Dkt. 13, at 9).

13

The Court agrees with the County Defendants that the *Bosh* claim is barred, because Nichols' alleged actions could not have occurred within the scope of her employment. *See* Part I.A.4, above; *Bates v. Bd. of Cnty. Comm'rs of Mayes Cnty.*, 674 F. App'x, 830, 834-35 (10th Cir. 2017) (holding a detention officer who allegedly sexually assaulted an inmate in his custody was not acting within the scope of his employment for purposes of *Bosh* claim). The Court will not read *Bosh* to apply beyond instances where the employee acted within the scope of employment. For the reasons explained above in Part I.A.4, the Court finds the County Defendants cannot be held liable for Nichols' actions on a *respondeat superior* theory.[3]

## II.  Motion of Nichols

The Court next addresses the arguments raised by defendant Nichols in favor of dismissal of Plaintiff's *Bosh* claim against her. Nichols argues that *Bosh* claims are limited to actions against political subdivisions and may not be extended to individual officers. Because Nichols was an employee of the Pushmataha County Detention Center, Nichols contends she cannot be held liable for a *Bosh* claim.

Plaintiff responds that this claim is viable against an individual, pointing to language in *Perry v. City of Norman*, 341 P.3d 689 (Okla. 2014). Specifically,

---

[3] Plaintiff uses a significant portion of her Response brief to argue that she has alleged a plausible claim for a violation of constitutional rights under § 1983. (Dkt. 13, 9-12). However, the County Defendants do not challenge this claim in their Motion to Dismiss. Accordingly, the Court will not further address Plaintiff's arguments regarding the § 1983 claim, which remains for resolution as to both of the County Defendants.

Plaintiff points out that *Perry* described the questions answered in *Bosh* as "concern[ing] the right of a detention center detainee to bring a cause of action for excessive force **against jailers** for injuries sustained when the jailers attacked the detainee." *Id.* at 690-91 (emphasis added). Plaintiff also points out that the *Perry* court noted *Bosh* was the progeny of *Washington v. Barry*, 55 P.3d 1036 (Okla. 2002), in which the court "recognized that a private constitutional excessive force action may exist for prison inmates **against prison officials**." *Id.* at 691 (emphasis added). Plaintiff additionally points to the *Perry* court's characterization of the detainee's argument in *Bosh*—that "the Okla. Const. art. 2, § 30 protects citizens from being physically abused by the **employees** of state and local entities that operate jails and correctional facilities, and such protection includes legal liability for such conduct." *Id.* (emphasis added). Plaintiff cites to no other authority in support of her contention.

The Court does not find Plaintiff's argument compelling. The Court agrees with Nichols and declines to extend *Bosh* to cover individual officers. Addressing the same issue, this Court has previously concluded:

> the *Bosh* opinion only held that Oklahoma **governmental entities** can be held liable for the use of excessive force by their employees in violation of the Oklahoma Constitution under a theory of *respondeat superior*, not individual actors. There are no grounds for so expanding upon the *Bosh* decision where the Oklahoma Supreme Court has not expressed support for any such expansive reading. *See Koch v. Juber*, CIV-13-0750-HE, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) (refusing to expand *Bosh* to provide a private

15

right of action against individual employees under the Oklahoma Constitution).

*Lynch v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Oklahoma, ex rel. Muskogee Cnty. Sheriff's Dep't*, 2018 WL 1417172, at *11 (Mar. 21, 2018) (emphasis in original). This Court's holding in *Lynch* is consistent with holdings of other courts addressing this issue. *See, e.g., Maher v. Oklahoma,* 165 F. Supp. 3d 1089, 1093 n.3 (W.D. Okla. 2016) ("Plaintiff points to no legal authority that permits a *Bosh* claim against an individual actor...."); *Shed v. Oklahoma ex rel. Oklahoma Dep't of Human Servs.*, 2017 WL 1496039, at *3 (E.D. Okla. Apr. 25, 2017) ("*Bosh* claims appear to be limited to actions against political subdivisions.") (citing *Maher*, 165 F. Supp. 3d at 1093 n.3). Plaintiff points to no contrary authority, and her citation to favorable language in *Perry* is not compelling.[4] Accordingly, Plaintiff's *Bosh* claim against Nichols is subject to dismissal.

Because the Court concludes Nichols is not subject to individual liability under *Bosh*, the Court will not address Nichols' additional argument that Plaintiff's *Bosh* claim is time-barred. Plaintiff's claims against Nichols for violation of civil rights under 42 U.S.C. § 1983 and for battery/issue preclusion remain for resolution.

---

[4] The Court notes that *Perry* concerned *Bosh* liability against a municipality, not an individual, as the claimant in *Perry* did not name any of the individual officers involved as defendants. 341 P.3d at 690. Nothing in *Perry* suggests an intent to expand *Bosh* liability to cover individual officers.

## CONCLUSION

For the reasons detailed above, Defendants Hedgecock and Board of County Commissioners' Partial Motion to Dismiss (Dkt. 7) and Defendant Tamara Nichols' Partial Motion to Dismiss (Dkt. 21) are **GRANTED**.

**IT IS SO ORDERED** this 19th day of July, 2018.

James H. Payne
United States District Judge
Eastern District of Oklahoma